## HILL *v.* RODERICK.

Testator devised " that my son R. have all that part of the plantation whereon I now live, to contain one hundred and seventy acres, to live upon and use during his life"— remainder to his children. The residue he devised to J. In 1800, R. and J., under the direction of the executor, established a consentable line—R.'s children being then minors. After they attained their majority, they partitioned the tract allotted to R. and *otherwise* assented to the division. A. purchased J.'s interest at sheriff's sale, and acquiesced in the division for seven years. *Held*, that the will required an immediate division of the land, and that, after such acquiescence of all parties, A. could not recover an excess of 14 acres, which were included in the allotment to R.

IN error from the Common Pleas of Fayette.

*Oct.* 26. This was an ejectment for a strip of land between the lands of which the parties were in undisputed possession. · The case was this: In 1785, two adjoining surveys were made for John Tate, the elder, for which a patent issued, calling for 320½ acres; but, by a recent survey, it had been ascertained to contain 372½ acres. In 1790 and 1799, John Tate devised: "I further will and devise that my son Robert Tate shall have that part of the plantation whereon· I now live, to contain one hundred and seventy acres, to live upon and make use of during his life, and at his decease to be equally divided among his children; and further, I will that my son John Tate shall have and fully possess and enjoy the *residue* of the plantation I live upon, to be disposed of by him as he pleaseth," and appointed his wife and one Jackson executors. In the year 1800, Jackson, the executor, sent for a surveyor to divide the land under the will; and Robert and John, the devisees, carried the chain when he marked a line dividing ·their shares. No survey, however, was made to ascertain the contents of the purpart allotted to Robert Tate. This tract had been

known as the Tateston or Hacker tract. In 1809, John Tate the younger mortgaged a moiety of a tract called Tateston, which he held under his father's will, describing it as one hundred and fifty acres and allowance ; and one of the boundaries was " thence by Robert Tate's part of said tract." In 1819, a judgment was recovered against John Tate, the younger, under which two hundred acres, adjoining Robert Tate and others, was sold in 1823 to the plaintiff. In 1827, judgment was recovered on a *sci. fa.* upon the mortgage of 1809 ; and, in 1829, sixty-one acres, being the residue of the mortgaged land, was sold to plaintiff. It was proved that the levy, under the judgment of 1819, covered the whole of the mortgaged property, except the sixty-one acres sold under that mortgage. Those sixty-one acres had been sold to Robert Tate, which was the reason they were not included in that levy. Until within a few years, the disputed land had been uncleared, and was but partially so at present. In 1833, Robert Tate died, and his children, who were minors at the time of the parol partition, commenced proceedings in partition in 1839, and their land was awarded at a valuation to the assignee of some of them ; and, under him, the present defendant held a conveyance for describing the land as about one hundred and eighty-four acres. It was proved that the children of Robert Tate, after they came of age, made no complaint, or difficulty, about the division line ; but it was talked about and agreed to by them. There was also the testimony of a witness that the present plaintiff had pointed out to the road-viewers the old line as the line between his land and that of Robert Tate.

EWING, P. J., instructed the jury that the children of R. Tate might confirm the parol partition made by their father ; and, if they had done so, the acquiescence of the plaintiff for seven years without dispute as to the line, especially when, as late as 1838, he had pointed it out as the division line, would bind him. And that there was another ground for the decision. If the levy, under the judgment of 1819, only came up to the agreed line, and the mortgage of 1809 called for that line, the plaintiff had no right to the land in dispute which lay beyond. The authorities he cited, as to the confirmation by the infants, were Litt. s. 258; Co. Litt. 171 b; Hubbard *v.* Cummings, 1 Greenl. 11; Bac. Abr. T. *Infancy and Age,* I. 8; 2 Vern. 225 ; 10 Serg. & Rawle, 117; 2 Kent. Com. 234 *et seq.*

The admission of evidence of the division line by agreement, and of what land was included in the survey, and the charge on

the points stated, were the errors assigned immaterial in the case.

*Deford,* for plaintiff in error.—There is but one difficulty here, and that is, whether a tenant for life can establish a boundary binding on his children. That he cannot, appears from Hill *v.* Roderick, 4 Watts & Serg. 221; 4 Kent. Com. 106; Bac. Abr. tit. *Leases,* B., I. 2; Com. Dig., *Estate by Grant,* E. 2, note *r*; Doug. 50; Jenkins *v.* Church, Cowp. 482; Bull. N. P. 96 b; Graham *v.* Londonderry, 3 Atk. 393. The person only of the minor is under the control of its parent, as guardian by nature : 2 Kent's Com. 219; Jackson *v.* Combs, 7 Cow. 36; Allison *v.* Wilkin, 1 Wend. 153; and he can do no act binding his estate : Hemmich *v.* High, 2 Watts, 159.

The sheriff's return is the proper evidence of what is included in the levy : Beeson *v.* Hutchison, 4 Watts, 443; unless it is not clear enough to identify the property : Scott *v.* Sheakly, 3 Watts, 52. Here the whole right and title was levied on, and the boundaries became immaterial, for all the right in the tract passed : McCormick *v.* Harvey, 9 Watts, 484; Inman *v.* Kutz, 10 Watts, 100; Zeigler *v.* Houtz, 1 Watts & Serg. 540; Swartz *v.* Moore, 5 Serg. & Rawle, 257.

*Dawson* and *Howell,* contrà.—The plaintiff could have no more extensive claim than was covered by his levy, and that may always be shown by parol : Buchanan *v.* Moore, 10 Serg. & Rawle, 279; Schall *v.* Miller, 3 Whart. 250; for the sheriff cannot sell more than that : Rodgers *v.* Gibson, 4 Yeates, 114; Grubb *v.* Guilford, 4 Watts, 223, 244. But it was shown beyond a doubt that the infant devisees had ratified the partition by the tenant for life, and, by their ratification, the proceeding became binding on both parties : Jackson *v.* Van Corlaer, 11 Johns. 127; Hubbard *v.* Cummings, 1 Greenl. 11, 1 New Hamp. 73; Brown *v.* Caldwell, 10 Serg. & Rawle, 114; McGinn *v.* Shaeffer, 7 Watts, 413. Besides, is it not plain a division was contemplated by the will ? The devise is of a specific portion for life, which could not be enjoyed until severed. What he held for life his children were to take as remainder-men.

*Nov.* 13. BELL, J., (after stating the devise, and the running of the division line in 1800.)—At the time this line was established, Robert's children were infants; but after his death, and subsequent to their attaining full age, they recognised it as being the division

line ascertaining the land devised to them in remainder.  They have never, in any way, called it into question, for the present litigation, which seeks to abrogate it, was originated by one claiming title under John Tate to the purpart assigned to him.  The point presented for determination is, whether Robert's children were bound by this division line, ascertained and acknowledged by their father and uncle, and remaining unimpeached for forty years?  If so, it is conceded to be obligatory on John Tate and all claiming under him.

When this case was here before, (4 Watts & Serg. 221,) it was decided simply, on the ground that the act of the tenant for life could not bind those in remainder, without their assent, which could not be given by Robert's children, who were minors, and consequently, there being no mutuality of obligation, the agreement establishing the division line ceased to have any binding effect upon John, or those deriving title from him, after the death of Robert.  This conclusion was arrived at without adverting to the terms of the devise, to which the attention of the court was not called by the counsel on either side.  The question has upon this occasion been presented in a new aspect, so far as the principle upon which it is to be decided is involved; and this relieves us from the necessity of inquiring into the errors assigned in the charge of the court below.

The will of the testator furnishes incontestable evidence that, when penning the devise under consideration, he had in contemplation an immediate partition of the land.  It is perfectly manifest, from the terms used and the directions given, he did not intend that his sons John and Robert should continue to occupy the estate as tenants in common, during the life of Robert.  The language of the devise conclusively repels such an idea.  The son Robert was to have that part of the plantation whereon the testator lived, to contain one hundred and seventy acres; and John was to possess and enjoy the residue.  Each of the devisees was to occupy in severalty, and that portion of the land to be enjoyed by Robert was specifically pointed out.  Not only was the number of acres named, but the site of the plantation on which they lie.  It is true, the will contains no express direction that a line of division shall be ascertained and established, but as this was essentially necessary to carry out the obvious intention of the testator, looking to a severalty of possession and enjoyment, it is not to be doubted he regarded the making of such demarcation as the inevitable consequence of the directions he gave.  Nor can it be supposed, from

the very nature of the subject, that the line to be marked between the first takers was intended as temporary or ambulatory. As already remarked, the land, at the date of the devise, was to a great extent unimproved. Both the sons of the testator were, at the time of his death, young men, and, in the ordinary course of nature, might be expected to live for many years. To give value to the respective portions of the plantation divided between the devisees, it was necessary the ground should be cleared and improved by an application of their money and labour. But were they to do this in utter uncertainty of the boundary of their respective possessions, or was that boundary liable to be shifted, after the lapse of years, and thus the toil and expenditure of one of the devisees made to enure to the benefit of the other? That the testator so intended, cannot, I think, be for a moment pretended. That he did entertain an intent as to an actual division of the land between his sons, is perceived upon the simple suggestion of it; that he contemplated such a division between them, subject to be set aside upon the accession of the remainder-man, involves consequences productive of such possible injustice, that it is not to be attributed.to a father providing for the future welfare of his children. . We are, therefore, of opinion the consentable line run by Robert and John, ascertaining a division of the land, in pursuance of the terms of the devise, was run and established with the sanction and under the authority of the will, and is, therefore, binding upon all parties claiming under it—more especially after the lapse of time which has had place here, during which all the persons in interest acquiesced. Had the testator expressly directed a dividing line to be marked after his death, no controversy could have arisen; but the implication that he so intended is so clear, as, in my judgment, to admit of no hesitancy. Nor does the case fall within the operation of the rule, *voluit sed non dixit*, for a necessary implication is to be accepted for as strong an indication of a testator's will as an express direction.

This view covers the whole case, and decides it in favour of the defendants in error. It renders it unnecessary to notice the several bills of exception taken to the ruling of the court below on questions of evidence, with the exception of the first bill, further than to remark that if they were even erroneous, it would furnish no ground for a reversal of this judgment, as the error inflicted no injury on the plaintiff. The evidence mentioned in the first bill of exceptions was rightly received.

Judgment affirmed.